IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS KIFLE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>YOUTUBE LLC, et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-01752-CRB<br><br>**ORDER DENYING AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

　　　　Pro se Plaintiff Elias Kifle is suing Defendants YouTube LLC and Paypal, Inc. for copyright infringement, trademark infringement, and breach of contract. See Second Amended Complaint (SAC) (dkt. 33). His claims arise from YouTube's termination of Kifle's YouTube channel and other users' subsequent display of Kifle's videos on YouTube without Kifle's permission. Id. at 3–4. Kifle now seeks a temporary restraining order and preliminary injunction "to restrain Defendants from allowing the copying, reproducing, uploading, displaying, or distributing of [Kifle]'s copyrighted and protected marks on their websites." Amend. Mot. for TRO (dkt. 31) at 1–2. He also asks the Court to "restore" his channel "and its automated copyright tools." Id. at 26. The Court concludes that there is no need for oral argument. The Court denies Kifle's motion because the grounds for relief raised in his motion are not likely to succeed on the merits, and Kifle has failed to raise serious questions going to the merits.

**I.　　BACKGROUND**

　　**A.　　Procedural History**

　　　　On January 14, 2021, Kifle sued YouTube in the U.S. District Court for the Northern District of Georgia. See Complaint (dkt. 1). On February 16, 2021, Kifle moved

for a TRO and a preliminary injunction.  See First Mot. for TRO (dkt. 11).  YouTube moved to transfer the case to this Court or, in the alternative, to dismiss the case for failure to state a claim.  See Mot. to Transfer (dkt. 15).  Kifle then moved for leave to file an amended complaint.  See Mot. to File Amend. Compl. (dkt. 17).  On March 12, 2021, the Northern District of Georgia granted Kifle leave to amend his complaint and evaluated YouTube's motion to transfer based on the Amended Complaint's allegations.  See Order Granting Mot. to Transfer (dkt. 24) at 3–4.  The Northern District of Georgia granted YouTube's motion to transfer.  Id. at 7–9.

On March 16, 2021, this Court set a briefing schedule regarding Kifle's first motion for a TRO and preliminary injunctive relief, see Order re Mot. for TRO (dkt. 29), and YouTube filed an opposition to the motion, see First Opp. (dkt. 30).  Kifle then moved for leave to file a second amended complaint and an amended motion for a temporary restraining order.  See Amend. Mot. for TRO (dkt. 31); Mot. for Leave to File SAC (dkt. 32).  The Court granted Kifle leave to file a second amended complaint and an amended motion for a TRO.  See Order Denying TRO, Granting Leave to File SAC (dkt. 35).  The court also denied Kifle's initial motion for a temporary restraining as moot and set a briefing schedule regarding Kifle's amended motion.  See id.[1]

### B. SAC Allegations

The SAC alleges that Kifle owns the "Mereja.tv website and Mereja TV satellite television channel."  SAC (dkt. 33) ¶ 6.  Between January 2016 and November 2020, Kifle operated a "parallel" YouTube channel that livestreamed his television program, displayed approximately 2,500 videos, and had 220,000 subscribers.  Id. ¶¶ 9, 17.  Kifle's channel was successful enough that YouTube invited Kifle to participate in a "Publishing Partner

---

[1] Kifle then moved for leave to file a supplemental brief containing new allegations in support of his amended motion for a TRO.  See Mot. to File Supp. Br. (dkt. 39).  The Court denied the motion for leave to file a supplemental brief and explained that Kifle could either proceed with his amended motion based on the allegations in the SAC or move to file yet another amended complaint based on whatever new allegations he wished to add.  See Order Denying Mot. to File Supp. Br. (dkt. 41) at 2.  Kifle has not moved for leave to file a third amended complaint, and the parties have now fully briefed his amended motion for a TRO.

Program," giving Kifle access to certain special features. Id. ¶¶ 74, 77.

On November 9, 2020, YouTube "abruptly terminated the livestream" and on November 11, 2020, YouTube "terminated" the YouTube channel and removed all videos on it. Id. ¶ 9. Kifle alleges that when YouTube took down his channel, the channel "was fully in compliance" with YouTube's terms of service. Id. ¶ 20. YouTube did not provide Kifle with an explanation for terminating the channel. Id. ¶ 9. But in its opposition to the instant motion, YouTube explains that YouTube had suspended another user, Zemedkun Bekele, for posting content that promoted violence, hate speech, and harassment. Opp. (dkt. 46) at 3 (citing Zhu Decl. (dkt. 46-2) ¶¶ 8–11). YouTube then observed that "videos of Bekele were still being uploaded to YouTube on other channels," including Kifle's channel, "in violation of YouTube's anticircumvention policy." Id. (citing Zhu Decl. ¶¶ 12–16).[2]

### 1. Copyright Allegations

The SAC provides conflicting information regarding what happened next. For example, it states that starting "[r]ight after" Kifle's YouTube channel was terminated, YouTube allowed "all of" his videos to be displayed on YouTube "without his permission." SAC ¶ 9. But the SAC later alleges that YouTube users "infringed at least 256 of [Kifle]'s copyrighted works and protected marks." Id. ¶ 13(7). Either way, Kifle has alleged that a number of YouTube users began posting his content without permission. The SAC provides screenshots purporting to show these videos. See id. ¶¶ 21, 22.

Although YouTube has a "repeat-infringer policy that provides for the termination of users who receive 3 copyright strikes," and copyright strikes include "when YouTube receives a valid takedown notice" regarding a user's channel, Kifle alleges that YouTube did not enforce this policy against users posting Kifle's videos. Id. ¶ 27. Kifle sent YouTube email notices containing URLs for over 250 allegedly infringing videos, but

---

[2] Kifle's reply states that Bekele "appears only in 10" of Kifle's videos, and that "a simple request to [Kifle] would have resolved the issue," but does not otherwise dispute YouTube's statements regarding Bekele's appearances in videos on Kifle's channel. Reply (dkt. 47) at 2.

YouTube "ignored" Kifle's emails at first. Id. ¶¶ 24–25.[3] On November 27, 2020, Kifle complained to YouTube that YouTube was not acting on his video takedown requests. Id. ¶ 33. YouTube responded by telling Kifle to submit his claims via a specific form on YouTube's website, but when Kifle explained that he could not access the form due to his channel's termination, YouTube did not respond. Id. ¶ 34.

The SAC notes that YouTube "belatedly" removed "some of the infringing content" on March 18, 2021. Id. ¶ 41. According to YouTube, YouTube has now removed "dozens of videos in response to [Kifle]'s requests and all but two of the more than 250 allegedly infringing videos identified in the SAC were not available on YouTube as of April 5, 2021." Opp. at 4 (citing Zhu Decl. ¶¶ 32–34). Further, Kifle has "retracted his claims of copyright infringement against the two remaining videos." Id. (citing Zhu Decl. ¶¶ 34–36). Kifle disputes this to the extent that at least one allegedly infringing video mentioned in the SAC remained on YouTube as of the date he filed his reply brief. See Reply at 3.

Of the allegedly infringing videos, a portion (71) consist of Kifle's television broadcasts that were "simultaneously transmitted" on YouTube by other users. SAC ¶ 39. Although Kifle sent YouTube "48-hour advance notices before the live broadcasts," YouTube took no action until recently. Id.

As to both the prerecorded videos and the simultaneously transmitted broadcasts, Kifle has not alleged that he obtained valid copyright registrations before filing this lawsuit. He alleges that he has since registered one of his live broadcasts, after initiating this lawsuit but before filing the SAC. See id. ¶ 21; SAC Ex. 1 (dkt. 33-2) at 3; Opp. at 8; Reply at 3–4.

### 2. Trademark Allegations

Kifle also alleges that "[t]he trademark 'Mereja TV' and logo are unique marks that

---

[3] The SAC lists nine YouTube channels that Kifle characterizes as "repeat infringers[,] having five or more videos and marks that have been illegally copied from [Kifle]'s website." SAC ¶ 29. In at least one instance, although a YouTube user removed one of Kifle's videos "when YouTube started cracking down on March 18, 2021," YouTube did not terminate the infringer's channel. Id. ¶ 23.

4

1   identify [Kifle]'s website, television channel, and videos." SAC ¶ 55. The word "Mereja"
2   means "information." See Opp. at 12. Kifle also refers to his television show title ("ነጭዉ
3   ነጭን ከዘመዴ ጋር," which translates to "The Facts with Zemede") as a "mark." SAC ¶ 56.
4   Kifle alleges that he "owns" a "pending U.S. federal trademark application for Mereja
5   TV," and both the Mereja TV logo and his show title are "clearly displayed on all his
6   works." Id. ¶¶ 57, 58.
7       As with the allegedly infringing videos, Kifle alleges that he sent YouTube many
8   requests to remove all materials that "infringe on his protected marks," but that YouTube
9   "ignore[d] the notices until March 18, 2021, when it finally decided to remove many of
10  them." Id. ¶ 59. Kifle has also discovered that one of the YouTube channels that has
11  posted his content links to a separate Paypal website. The Paypal account at that website
12  uses Kifle's channel and program titles; Kifle sent Paypal several cease and desist notices
13  but has apparently not received a response. Id. ¶¶ 64–68.

### 3.  Claims for Relief

Based on these allegations, the SAC asserts three claims for relief.

First, the SAC asserts a claim for "contributory and vicarious" copyright infringement under 17 U.S.C. § 512. Id. ¶¶ 96, 98. The SAC alleges that based on Kifle's emails to YouTube, YouTube has (or had) "both actual and red flag knowledge of the infringement," and "failed to take simple measures to prevent damage to [Kifle]'s copyrighted works." Id. ¶¶ 44, 51. Kifle asserts that YouTube's failure to enforce its repeat-infringer policy constitutes a violation of a service provider's obligations to qualify for certain limitations of liability under 17 U.S.C. § 512(i). Id. ¶¶ 98–102.

Second, the SAC asserts a claim for "contributory trademark infringement" in violation of 15 U.S.C. § 1114, resulting in trademark dilution under 15 U.S.C. § 1125(c). Id. ¶¶ 116–17. And the SAC states that this trademark infringement gives rise to several derivative claims under California law. Id. ¶¶ 118–19 (citing Cal. Civ. Code § 3344(a); Cal Bus. Prof. Code §§ 17200, 17203).

Third, the SAC asserts a claim for breach of contract based on YouTube's terms of

service and partner program. Id. ¶¶ 123–27. This claim arises from (1) YouTube's termination of Kifle's YouTube channel despite its alleged compliance with YouTube's terms of service, and (2) YouTube's conduct "contributing to the infringement of his copyright and trademarks." Id. ¶¶ 74, 124.

### C. The Instant Motion

The amended motion incorporates the SAC's core allegations, but implicates only Kifle's copyright and trademark claims (and not Kifle's breach of contract claim). See Amend. Mot. for TRO ¶¶ 45–46. Kifle requests that the Court order YouTube and Paypal to stop permitting users to post his protected content. Id. at 1–2. He also requests that the Court order YouTube to "fully restore" his YouTube channel "and its automated copyright tools that he was using for uploading his videos and matching them with infringing videos for instantaneous action." Id. ¶ 55.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Alternately, such a plaintiff may demonstrate that "serious questions going to the merits were raised" and that "the balance of hardships tips sharply in [the plaintiff's] favor," so long as the other two Winter elements are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (quotation omitted). The "[l]ikelihood of success on the merits is the most important Winter factor." Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quotation omitted). These same principles apply to a motion for a TRO. See Martinez Franco v. Jennings, 456 F. Supp. 3d 1193, 1196–97 (N.D. Cal. 2020).

## III. DISCUSSION

Kifle argues that he is entitled to the prospective relief that he seeks because he has alleged plausible claims for contributory copyright and trademark infringement, Amend.

6

1   Mot. for TRO ¶¶ 45–46, and because the continued infringement necessarily causes him
2   irreparable harm, id. ¶¶ 47–48.  He also argues that YouTube would not "be harmed in any
3   way" by stopping users from posting Kifle's content, id. ¶ 49, and that enforcing the
4   relevant copyright and trademark statutes is in the public interest, id. ¶¶ 52–53.

5         YouTube argues that Kifle's copyright and trademark claims have no possibility of
6   succeeding on the merits.  See Opp. at 5.  YouTube argues that Kifle's copyright claim
7   fails based on Kifle's failure to (1) register any copyrights before filing suit, (2) identify
8   the works he claims are being infringed, and (3) allege that YouTube had actual
9   knowledge about ongoing infringement.  See id. at 8–11.  And YouTube argues that
10  Kifle's trademark claim must also fail because Kifle has not plausibly alleged (1) that he
11  has valid, protectable trademarks, (2) that YouTube intentionally induced any third-party
12  to infringe on those trademarks, or (3) that YouTube was aware of any infringement and
13  continued to supply services to the alleged infringer.  See id. at 11–13.  YouTube also
14  argues that Kifle has failed to show irreparable harm or that the equities and public interest
15  support granting the relief he seeks.  See id. at 13–17.

16        The Court concludes that Kifle has not shown a likelihood of success on the merits,
17  or serious questions going to the merits.  Kifle's allegations indicate that YouTube was
18  less than diligent in ensuring that users do not post Kifle's content.  But those same
19  allegations—in their current form—do not plausibly give rise to claims for copyright or
20  trademark infringement.  Nor could they justify the sweeping prospective relief that Kifle
21  seeks.  Therefore, the Court denies Kifle's motion.

22        **A.**    **Likelihood of Success on the Merits**
23        The Court's analysis begins and ends with the merits of Kifle's claims because the
24  SAC does not plausibly state claims for copyright or trademark infringement.  See Winter,
25  555 U.S. at 20.

26            **1.**    **Copyright Claim**
27        Section 502(a) of the Copyright Act authorizes a court to grant injunctive relief "on
28  such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

7

17 U.S.C. § 502(a).

To present a prima facie case of direct infringement, a plaintiff "must show ownership of the allegedly infringed material" and "must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2007).

To establish secondary infringement, i.e., "contributory" or "vicarious" infringement, a plaintiff must first "establish that there has been direct infringement by third parties." Id. at 1169. If the plaintiff can do so, the plaintiff may show contributory infringement by establishing that the defendant intentionally induced or encouraged direct infringement. See id. at 1170–71. The plaintiff may show vicarious infringement by establishing that the defendant has profited from direct infringement "while declining to exercise a right to stop or limit it." Id. at 1173 (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005)).

Copyright infringement claims must overcome certain procedural hurdles. Under 17 U.S.C. § 411(a), with certain exceptions, "no civil action" for copyright infringement "shall be instituted until the preregistration or registration of the copyright claim has been made in accordance with this title." In plain English, that means most copyright owners may not file an infringement suit before they have registered the relevant work. Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 887 (2019). "[R]egistration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright." Id. at 886.

17 U.S.C. § 411(c) contains one relevant exception. For a work, "the first fixation of which is made simultaneously with its transmission, the copyright owner may . . . institute an action for [copyright] infringement" without having registered the work in certain circumstances. The copyright owner must (1) serve "notice upon the infringer, not less than 48 hours before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work," and (2) make "registration for the work," if otherwise required under § 411(a), "within

three months after its first transmission." 17 U.S.C. §§ 411(c)(1)–(2).  The copyright owner must take these steps "in accordance with requirements that the Register of Copyright shall prescribe by regulation."  17 U.S.C. § 411(c).  Regulations require that service of the "Advance Notice" be made "on the person responsible for the potential infringement" within the 48 hour window.  37 C.F.R. § 201.22(e)(1).  They also require that the copyright owner sign the notice with "an actual handwritten signature," though if the notice is served via email, the handwritten signature requirement "shall be considered waived" if the other service requirements enumerated in 37 C.F.R. § 201.22(e) are met.  Id. §§ 201.22(d)(2), (3).  Those requirements, in turn, state that an Advance Notice may be "effected" via email only if before the "simultaneous transmission take[s] place, the person responsible for the potential infringement receives written confirmation of the Advance Notice, bearing the actual handwritten signature of the copyright owner or duly authorized agent."  Id. § 201.22(e)(iii)(B).  Thus, Advance Notice generally requires a handwritten signature, but not if Advance Notice is sent through email, so long as the proper recipient timely receives written confirmation of the Advance Notice and that written confirmation includes a handwritten signature.

Applying these rules, Kifle has not shown a likelihood of success on the merits of his copyright claim, Winter, 555 U.S. at 20, nor has he raised serious questions going to the merits, Alliance for Wild Rockies, 632 F.3d at 1131–32.  Kifle's copyright claims are barred by 17 U.S.C. § 411.

Kifle has not plausibly alleged that he obtained a valid copyright registration for any relevant video before initiating this lawsuit.  See SAC ¶ 21; SAC Ex. 1 at 3; Opp. at 8; Reply at 3–4.  At best, Kifle registered a single video after filing suit but before filing his SAC.  Id.  The Court agrees with other courts in this district that a plaintiff "cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending [the plaintiff's] pending complaint."  UAB "Planner 5D" v. Facebook, Inc., No. 19-cv-3132-WHO, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019) (citing Izmo, Inc. v. Roadster, Inc., No. 18-cv-6092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019)).  By tying

9

the registration requirement to when a "civil action" is "instituted," the plain language of § 411(a) refers to the beginning of a lawsuit, not the filing of an amended pleading. See also Fourth Estate, 139 S. Ct. at 887 (interpreting § 411(a) to govern when a copyright holder may "commence" an infringement "suit").

The § 411(c) simultaneous transmission exception to § 411(a) does not apply here. For it to apply, Kifle would have needed to serve Advance Notice "upon the infringer" at least 48 hours before the simultaneous transmission, 17 U.S.C. § 411(c)(1), and if that Advance Notice came via email, the "person responsible for the infringement" would have to receive "written confirmation of the Advance Notice, bearing [Kifle's] actual handwritten signature," 37 C.F.R. § 201.22(e)(2)(iii)(B). Even assuming that YouTube could be considered "the infringer" or the "person responsible for the infringement" based on Kifle's theory of contributory and vicarious infringement, Kifle sent YouTube notice via email and does not allege that YouTube received written confirmation of the Advance Notice bearing his handwritten signature. See Reply at 5–6 (arguing that the handwritten signature requirement is antiquated and unwise, but not asserting that Kifle complied with the requirement).

Therefore, § 411(a) bars Kifle's copyright claim, and § 411(c) does not provide an exception for his claim insofar as it relates to simultaneous transmissions.[4]  Because Kifle's copyright claim cannot proceed, the Court need not reach the question whether Kifle has otherwise plausibly alleged the elements of a contributory or vicarious copyright infringement claim.

### 2. Trademark Claim

To prevail on a direct trademark infringement claim, a plaintiff must show that "(1)

---

[4] The Court notes one additional point regarding the single video for which Kifle obtained registration after initiating this lawsuit but before filing the SAC. See SAC ¶ 21; SAC Ex. 1 at 3; Opp. at 8; Reply at 3–4. Even if Kifle could raise a copyright infringement claim based on this video, Kifle has not alleged that this video remains available for viewing on YouTube. Therefore, with respect to that video, Kifle has failed to show irreparable harm in the absence of prospective relief. See Alliance for Wild Rockies, 632 F.3d at 1131–32.

it has a valid, protectable trademark," and (2) the defendant's "use of the mark is likely to cause confusion." Applied Info. Sciences Corp. v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir. 2007). A defendant can be held liable for a third party's infringing acts if the defendant "intentionally induces another to infringe a trademark, or if [the defendant] continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 854 (1982).

Thus, whether a plaintiff asserts a claim for direct or indirect trademark infringement, the threshold question is whether the relevant language used in connection with a product is "entitled to protection." Applied Info. Sciences Corp., 511 F.3d at 969 (citation omitted). A plaintiff may establish a "protectable interest" by showing that "(1) it has a federally registered mark . . .; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." Id. at 970. A mark is "inherently distinctive" if its "intrinsic nature serves to identify a particular source." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210 (2000). "In the context of word marks" Courts have applied the "test . . . in which word marks that are 'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film) or 'suggestive' ('Tide' laundry detergent) are held to be inherently distinctive. Id. at 210–211 (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 53 F.2d 4, 10–11 (2d Cir. 1976) (Friendly, J.)). But a mark that is "not inherently distinctive" can also acquire distinctiveness "if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" Id. (quoting Inwood Labs, 456 U.S. at 851 n.11).

Applying these rules, Kifle has not shown a likelihood of success on the merits of his trademark claim, Winter, 555 U.S. at 20, nor has he raised serious questions going to the merits, Alliance for Wild Rockies, 632 F.3d at 1131–32.

Kifle has not plausibly alleged that he has a "valid, protectable trademark." Applied Info. Sciences Corp., 511 F.3d at 969. First, he does not allege that he has a federally registered mark. See SAC ¶¶ 55–58. Second, although he alleges that the

Mereja TV ("Information TV") and "The Facts with Zemede" channel and program titles are "inherently distinctive," id. ¶ 58, he has not explained why. It is not obvious why the channel title "Mereja TV" ("Information TV") and program title "The Facts with Zemede" intrinsically identify a particular source, as opposed to merely describing the channel and program. Third, although Kifle's reply brief argues that the titles, if only descriptive, have acquired a secondary meaning in the market, see Reply at 7–9, this argument relies exclusively on allegations not in the SAC—and thus allegations that the Court may not consider. See supra note 1. In sum, Kifle's channel and program titles may be protectable, but the SAC lacks sufficiently detailed allegations to support that conclusion.

  Because the failure to allege a protectable trademark is fatal to Kifle's trademark infringement claim, the Court need not reach the more difficult question whether YouTube had knowledge and failed to act regarding any trademark infringement. Furthermore, Kifle complained to YouTube about trademark infringement (rather than copyright infringement) for only a subset of the videos, and YouTube has apparently taken down those videos, or is at least attempting to take down those videos. Thus, any prospective relief regarding those videos would have little if any effect on the status quo.

*

  Because the Court concludes that Kifle is unlikely to succeed on the merits with respect to the claims raised in the instant motion, and indeed raises no serious questions going to the merits of those claims, the Court need not consider the other factors relevant to granting a TRO or a preliminary injunction. But the Court also notes that Kifle's requested relief is not adequately tailored to the claims giving rise to his motion. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1119 (9th Cir. 2009) ("[I]njunctive relief must be tailored to remedy the specific harm alleged") (quotation omitted). If YouTube were engaging in copyright or trademark infringement, the proper remedy would be an order requiring YouTube to take the steps necessary to stop engaging in copyright or trademark infringement. An order that also requires YouTube to restore Kifle's channel would be

impermissibly "overbroad." Id. at 1141.[5]

## IV.  CONCLUSION

For the foregoing reasons, Kifle's motion for a TRO and a preliminary injunction is denied.

The parties' briefs indicate that before Kifle initiated this lawsuit, YouTube had not taken steps to remove Kifle's content posted by other users. That has since changed. The briefs also indicate that before YouTube filed its opposition to Kifle's motion, Kifle was not aware why his channel was taken down. That has also changed. Given these developments, the Court encourages the parties to communicate and attempt to reach a mutually agreeable resolution.

**IT IS SO ORDERED.**

Dated: April 19, 2021



CHARLES R. BREYER
United States District Judge

---

[5] This may not be the case with respect to Kifle's breach of contract claim, which focuses on YouTube shutting down Kifle's channel in addition to YouTube users posting Kifle's content. But the instant motion is not based on that claim.